JAMES MILLAY & *al.* vs. ISRAEL MILLAY & *al.*

Where one in possession of lands not his own, submitted to the title of the true owner and consented that a conveyance thereof might be made to a third person, from whom, after the conveyance was completed, he received a bond for a deed on the performance of certain conditions; it *was held,* that his occupation after that time could be only that of a tenant at will under the grantee; and that the latter could convey the land and pass the title to another, notwithstanding that the obligee at the time of this conveyance produced his bond and gave notice that he claimed the land.

One may make a peaceable entry upon his own land; and having so entered, he is entitled to protect himself from being turned off by one, who has no title therein.

An instruction to the jury, that if they believed that one of the parties had attempted to deceive them in an important particular relative to the issue, they might take it into consideration in connexion with the other conflicting testimony, is not legally objectionable.

TRESPASS *vi et armis,* for an assault and battery committed upon the plaintiff by the defendants. The defendants, by brief statement, pleaded, that " *Israel Millay* made an entry into a tract of land called the *Preble* lot, the possession and fee of which he claimed and owned, and that said *James* undertook to remove him, the said *Israel,* from said land; that said *Israel* and the other defendants, as his servants, were plowing said land; and that said *Israel* resisted the attacks of the plaintiff, and the defendants did nothing more than what was necessary for self defence, and to continue plowing the land."

---

---

On the trial before WESTON C. J. it appeared that the field where the transaction took place was near to the residence of the plaintiff, and had been many years in his possession and occupancy ; that the defendant, *I. Millay,* had made an entry into the field peaceably, in the absence of the plaintiff, and with the other defendants was there plowing. It became a question of importance at the trial, whether the entry of *Israel Millay* into the land was lawful, and whether he had the right to exercise the acts of ownership over it he assumed to do. It appeared, that *John Millay,* the father of *Israel,* who died in 1822, was seized of the land at the time of his death, and had been so for several years before, but that the paramount title was in *Mrs. Preble ;* that the widow of *John Millay* took out administration upon his estate, and employed the plaintiff to assist her in the administration and in the management of the estate. The plaintiff introduced a quit-claim deed of the lot from the widow of *John Millay* to himself, dated *March* 22, 1826, and proved that he had been in the occupancy since, until the time of the affray. There was evidence tending to show that the plaintiff entered and occupied for the benefit of the heirs of *John,* and also that he occupied, claiming it as his own. There was evidence also tending to show that the plaintiff had attempted to purchase the land of *Mrs. Preble,* and that she declined to convey to him, but expressed a willingness to convey for the benefit of the heirs of *John Millay ;* and there was also testimony tending to show, that the purchase was to be made of *Mrs. Preble* for the benefit of the plaintiff. All the witnesses concurred in stating, that the deed of the land from *Mrs. Preble* to *Savage,* dated *Jan.* 23, 1829, was made with the consent and at the request of the plaintiff. Some money appeared to have been paid towards the land by the plaintiff, and the amount was tendered to him by *Israel Millay. Savage,* on *Feb.* 19, 1833, conveyed the land to *Israel Millay,* and a witness stated, that the plaintiff was then present, and objected to the conveyance, and insisted that it should rightfully be conveyed to him, and produced a bond for a conveyance from *Savage* on certain conditions.

The counsel for the plaintiff requested the Chief Justice to instruct the jury, that if they were satisfied, that the plaintiff had previous possession of the land, claiming it on his own account,

and the defendants were notified by the plaintiff, that he intended to prevent their occupying the land, they had no right to use violence against the plaintiff in obtaining or retaining possession of the land. The instruction given was, that the land being conveyed to *Savage* by the consent and procurement of the plaintiff, the seizin was in *Savage,* and the subsequent possession of the plaintiff was in subordination to *Savage's* legal title; that if however the plaintiff had acted in good faith, and was fairly entitled to the land under a bond from *Savage,* the deed subsequently taken from *Savage* was fraudulent and void as against the plaintiff, and that the defendants in that case had no right to repel by force the force used by the plaintiff. But if the plaintiff acted in trust for the heirs of *John,* and procured the conveyance to be made to *Savage* in furtherance of the same trust, the legal title was in *Israel,* and that having entered peaceably, he had the rights of an owner, and as such might use such force as was necessary to repel the forcible attempt of the plaintiff to turn off his team. No other instruction was given on the points on which· instruction was requested.

It was in evidence, that in the conflict, the plaintiff had received blows upon the hand and wrist, and when this testimony was offered, the plaintiff showed to the jury a bunch on his wrist, and a thickening of the integuments on the back of his hand. Several witnesses testified, that there was the same bunch on the wrist of the plaintiff, and the same appearance upon the back of his hand many years before the conflict; and there was evidence tending to show, that at a trial in the Common Pleas, between the same parties, in an action brought by the plaintiff for a beating subsequent to the one now in controversy, the plaintiff exhibited to the jury the same wrist and hand with the same marks. The counsel for the plaintiff requested, that the jury should be instructed, that if the plaintiff exhibited his injured hand and wrist in the trial of another action, such evidence was improperly admitted in that action, and that in this action that fact should have no effect, it being for another and distinct trespass. The jury were instructed, that a recovery of damages in that action for an injury received at the time now in controversy, that action being for a subsequent affray, would be no bar to a recovery for the injury now charged; but that if the plaintiff had attempted to deceive them by passing off

the appearances on his wrist and hand, as having been occasioned by the blows received in the field, when in truth they were of much longer standing, they would consider this attempt in connexion with the other testimony in the case, which in relation to the conflict itself, was upon many points conflicting. The jury returned their verdict for the defendants, which was to be set aside, if the instructions requested and withheld should have been given, or if such as were given were erroneous.

*Tenney* argued for the plaintiff: — and to the point, that there was no legal evidence on which a trust estate could be based, cited *Northampton Bank* v. *Whiting,* 12 *Mass. R.* 104 ; *Jenney* v. *Alden, ib.* 375 ; *Flint* v. *Sheldon,* 13 *Mass. R.* 443 ; *Stackpole* v. *Arnold,* 11 *Mass. R.* 27 ; *Goodwin* v. *Hubbard,* 15 *Mass. R.* 210 ; *Runey* v. *Edmands, ib.* 294 ; *Chadwick* v. *Perkins,* 3 *Greenl.* 399 ; *Given* v. *Simpson,* 5 *Greenl.* 303.

*Wells* and *Bronson* argued for the defendants ; and to show, that as the plaintiff entered under the heirs of *John Millay,* he could not elect to consider himself a disseizor, and could become such only by their election, cited *Porter* v. *Hammond,* 3 *Greenl.* 188 ; *Peters* v. *Foss,* 5 *Greenl.* 182 ; *Brimmer* v. *Proprietors Long Wharf,* 5 *Pick.* 131.

The opinion of the Court was drawn up by

SHEPLEY J. — Whatever of interest the plaintiff might have in the land by virtue of his occupation and the deed from the widow of *John Millay,* he was precluded from questioning the title of *Savage,* by consenting, that the title should be conveyed to him, and by receiving a bond from him for a conveyance of it. After that time his occupation could be only that of a tenant at will under *Savage.* The title passed to *Israel Millay* by the conveyance from *Savage,* and the plaintiff was in a position no more favorable than before that conveyance. *Israel* might make a peaceable entry upon his own estate ; and having so entered he would be entitled to protect himself against one, who had no title. Any notice of the intentions of the plaintiff given to *Israel* would not change the rights of the parties. The instructions requested on this point were properly refused ; and those, which were given,

were very favorable to the plaintiff.  Whether more so, than the testimony authorized, it is unnecessary to consider.

The hand of the plaintiff appears to have been exhibited to the jury in connection with the testimony tending to prove that it had been thus injured in this affray without objection.  Testimony was afterward introduced by the defendants to prove, that the injury exhibited, had existed years before this conflict.  The instruction to the jury, that if they believed, that the plaintiff attempted to deceive them in this particular, they might take it into consideration in connexion with the other conflicting testimony in the case, does not declare any legal rule controling the judgment of the jury. They were left free to allow it to have such an influence as they should think reasonable and just.  It is rather a commentary on the testimony called forth by the position in which the plaintiff had chosen to place himself, than a statement of any rule or presumption of law.  It was much less severe than the rule, which the law applies to the testimony of a witness thus situated ; and it does not appear to be liable to any just objection.

*Judgment on the verdict.*